UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

NOV 0 9 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-548-GWU

YEVONNE F. HAMILTON,                                 PLAINTIFF,

VS:                  MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT,

## INTRODUCTION

Yevonne Hamilton brought this action to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income (SSI). The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of

1

impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health

2

and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through

3

the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the

4

lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Hamilton, a 50 year-old woman with a high school education, suffered from impairments related to hypertension, low back pain, depression, dysthymia, anxiety, and a substance addiction disorder. (Tr. 21-22). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of medium level work. (Tr. 23). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 23). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 22).

Hamilton alleged a disability onset date of June 19, 1989 on her current SSI application. (Tr. 353). However, an ALJ issued a final decision dated July 20, 2000 on a previous application. (Tr. 313-321). The current ALJ chose not to reopen this prior application (Tr. 17-18) and, so, the pertinent time period for consideration runs from the November 7, 2000 filing date of the current SSI

5

application (Tr. 353) through the May 21, 2003 date of the final decision.[1]

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert Carroll Tarvin included an exertional limitation to medium level work along with such non-exertional restrictions as (1) an inability to more than occasionally climb or use ramps and stairs; and (2) a limitation to simple, one-two-three step instructions involving only non-public work in a low stress, routine environment. (Tr. 114). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 115). The ALJ then presented another hypothetical question including an exertional limitation to light level work along with such non-exertional limitations as an inability to more than occasionally climb, use ramps or stairs, balance, stoop, kneel, crouch or crawl, and a need to avoid vibration as well as the previously-cited mental limitations. (Tr. 115). The expert again identified a significant number of jobs as being available. (Tr. 115). Therefore, assuming that the vocational factors considered by Tarvin fairly characterized Hamilton's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error. The factors considered by Tarvin were essentially consistent with the limitations indicated by Dr. John Rawlings

---

[1] The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date. Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993).

6

(Tr. 412-421) and Dr. Timothy Gregg (Tr. 466-474), the non-examining medical reviewers. The only restriction indicated by Dr. Mitchell Wicker, a treating source, was a need to avoid caffeine. (Tr. 303, 482). The ALJ's opinion was compatible with this opinion. The only restriction reported by Dr. Michael Vories, another treating source, was that the claimant should not drive while taking her medication. (Tr. 501, 503, 505, 507, 509, 511). While this restriction was not presented to the vocational expert, the Dictionary of Occupational Titles (DOT) does not indicate that driving was a requirement for either of the positions of hand packager or kitchen helper, the two jobs cited by the vocational expert.[2] (Tr. 115). Furthermore, the claimant has not asserted that the omission of this factor constituted reversible error. Therefore, these reports provide substantial evidence to support the administrative decision.

Hamilton argues that the ALJ erred in rejecting as binding the opinion of Dr. Jeffrey Prater, a treating source. Dr. Prater identified extremely severe physical restrictions on an August, 2001 Medical Assessment of Ability to do Work-Related Activities Form. (Tr. 299-301, 486-488). However, Dr. Prater's treatment records do not support such severe restrictions. In early to mid 2000, the plaintiff's back pain was "controlled or improved" with medication. (Tr. 490-491). On November 13, 2000, straight leg raising was negative. (Tr. 294). The doctor does not appear to have seen the plaintiff again until the August, 2001 date he completed the assessment form. (Tr. 488-498). The doctor based his restrictions on the form on lumbar problems, yet the related findings of other physicians were essentially benign. Dr. Wicker noted a full range of back motion with intact reflexes in December of 2000. (Tr. 302). Funduscopic examination

---

[2] See DOT Section 920.587-018 concerning the position of hand packager as well as DOT Section 318.687-010 concerning the job of kitchen helper.

7

was unremarkable. (Tr. 302). In January of 2001, Dr. Wicker reported that there was no organic disease to base her treatment upon and he recommended that an MRI Scan be obtained. (Tr. 304). In February of 2002, the MRI Scan was noted to be unremarkable. (Tr. 306). Dr. Wicker found no significant abnormalities in the patient's condition the following March. (Tr. 307). Dr. Vories repeatedly found no focal, motor, sensory, or neurological deficits upon physical examination. (Tr. 500, 502, 504, 506, 508, 510). Therefore, the ALJ properly rejected Dr. Prater's opinion.

Hamilton asserts that the ALJ erred in failing to find that fibromyalgia was a "severe" impairment. Dr. Vories reported a diagnosis of unspecified fibromyalgia. (Tr. 500, 502, 508, 510). However, Dr. Vories did not identify any functional restrictions which related to this condition. The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Therefore, the Court must reject the plaintiff's argument.

The ALJ also dealt properly with the evidence of record relating to Hamilton's mental status. Psychologist Robert Eardley, an examining source, opined that the plaintiff needed to avoid crowds, a finding reflected in the hypothetical question. (Tr. 427). The question included all of the mental limitations reported by Psychologist Dixie Moore, who testified at the administrative hearing as a medical advisor. (Tr. 79). These reports provide substantial evidence to support the administrative decision.

Slightly different, but not necessarily totally disabling, restrictions were reported by Psychologists Ilze Sillers (Tr. 441-442) and Jane Brake (Tr. 460-461), the non-examining medical reviewers. These limitations were offset and outweighed by those of Eardley and Moore.

Dr. Prater identified very severe mental restrictions on an August, 2001 Mental Medical Assessment of Ability to do Work-Related Activities Form. (Tr. 296-297, 483-484). Treatment records indicate that Dr. Prater primarily saw the plaintiff for physical problems. (Tr. 294-295, 489-496, 520-521). His opinion is offset by those of mental health professionals such as Dr. Eardley and Moore. The administrative regulations provide that "we generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist." 20 C.F.R. Section 416.927(d)(4). Therefore, Dr. Prater's opinion was properly disregarded.

Extremely severe mental restrictions were also reported by Julia States, a licensed clinical social worker, who provided treatment to Hamilton. (Tr. 604-606). Under the administrative regulations, States would not be considered an "acceptable medical source" whose opinion is binding on the administration. 20 C.F.R. Section 416.913. Therefore, the ALJ properly rejected this opinion.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the ___9___ day of November, 2005.

_____
G. WIX UNTHANK
SENIOR JUDGE